Denio, C. J.
The counsel for the jteople insists that the judgment is conclusive against the plaintiff in error as to the facts, and that we cannot review the case upon the evidence. But the position is not well taken. Where the trial in the special sessions is before the magistrate, without a jury, the certiorari to the supreme court may require the return of the evidence for the consideration of the superior tribunal, though it is otherwise where 'there has been a trial by jury., (2 R. S., 717, §§ 42, 43, 44, 46, 49; Vanderwerker v. The People, 5 Wend., 530; Son v. The People, 12 id., 344; Alkenbrack v. The People, 1 Denio, 80; Niblo v. Post’s Administrators, 25 Wend., 280.) In examining the record of the supreme court upon the certiorari, we are to inquire whether its judgment was right upon the question properly before it for adjudication. Thus it becomes our duty to determine upon the question of fact which was decided by the magistrate in his court. (Judiciary act, Laws of 1847, 321, §§ 8, 10, 11; 2 R. S., 166, §§ 24, 25.)
Upon the facts, the case was as follows: The complainant, John Waffle, and‘the defendant, the present plaintiff in error were owners of adjoining farms, in Springfield, Otsego county. The complainant was the owner of twenty-three sheep of a mixed breed, half English and half Southdown. On Saturday morning, 13th November, 1852, he missed one of them. It was marked J. W., on the left side, with tar and lampblack. About noon of the same day, he saw a fresh sheepskin in the possession of one George Walker, a tinpedler, which, in his testimony on the trial, he identified positively as the skin of the sheep he had lost. The mark *595 was nearly obliterated, and presented the appearance of having been picked or cut off with a knife, but he could, as lie swore, still distinguish the letters. Walker, and one Gardiner, another pedler, who it seems traveled with Walker, were examined on the part of the prosecution, and swore that they lodged at the defendant’s house on the Friday night preceding the Saturday referred to, and that on Saturday morning Walker purchased the skin' of the defendant for one dollar, the usual price of such a piece of property. They testified that they had fresh mutton at their meals in the evening and in the morning. Their attention being called to the marks, they both swore that they could make out the W. Walker said there were traces of another letter, but he could not tell what it was. Both of these witnesses stated that there was an appearance of an attempt to remove the marks by pulling off the wool where they had been made. Benjamin Waffle, the complainant’s brother, swore that he knew the complainant’s sheep, and from the quality of the wool, and the marks, he believed the skin to have come from his brother’s sheep. He could still discover the remains of the W., and said that the other letter looked like an I or a J. The complainant and the defendant were not on good terms.
The defendant examined several witnesses as to the remains of the marks. Three of them swore that there was the appearance of a letter which seemed to them to be an N; one of them said it might be a W, and another said that a person could make any letter he chose out of it; one of them said there was an appearance of the wool having been pulled off or rubbed where the marks were. . Besides attempting to controvert the proof of identity the defendant endeavored to show that the skin in question was one of two sheep skins which his brother William had brought to his house the week preceding that on which the skin was sold to the pedler, but William who was called by the defendant swore positively that the skin bought *596 by the pedler, which seemed to have been present at the place of trial, was not one of those which he brought. One of those was a dry skin and the other had long coarse wool, not at all like the one in question. .The use of fresh mutton in the defendant’s family, seems to have been sufficiently accounted for by proof which was given that the defendant had half a butchered sheep brought to his house the week before. The trial took place on Tuesday the 16th November, three days after the sheep was missed.
The proof of identity appears to me to be pretty satisfactory and the defendant wholly failed to account for his possession of the skin. I think therefore that a case was made out sufficient to charge the defendant with the larceny with which he was charged.
In the course of the trial there was an exception taken to the ruling of the magistrate. Before William Barringer had been sworn the defendant offered to prove by one Wilkie that “ William Barringer had killed the sheep that had been used in the defendant’s family during the season.” The object of the evidence seems to have been to account for the mutton used on the defendant’s table. On an objection by the counsel for the people, the justice ruled that the defendant might show that William Barringer had killed sheep during the last week. The defendant excepted. If the period to which the defendant was restricted was too limited, and it probably was, as fresh mutton at that season of the year would keep more than one week, the error was cured by the fact that when William was subsequently called he testified, without objection to the killing of a sheep and bringing part of the mutton to the defendant the week before that to which the defendant had been confined upon the examination of Willsie He also testified to his general practice of killing the sheep on a farm on which he lived and bringing the mutton to the defendant, without objection, without restriction in point of time.
*597 In the points of the defendant’s counsel much reliance is placed upon the fact that the complainant did not testify in terms that his sheep was stolen, or that he had not consented to its being taken away. The suggestion is based upon the position that a larceny must be proved to be committed by some one before the accused can be called upon to account for property found in his possession. But the objection is hypercritical. The complainant testified that he had a certain number of sheep, and had counted them a few days before, on a particular morning he missed one of them, and then went on to identify the skin which the defendant had sold as that of the lost sheep. This was enough to a common intent. The defendant could have enquired, had he seen fit, whether he had not voluntarily parted with the animal, but he did not choose to do so.
The judgment of the Supreme Court ought I think to be affirmed.
All the judges concurring,
Judgment affirmed.